

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2007

# USA v. Hernandez-Gonzalez

Precedential or Non-Precedential: Precedential

Docket No. 06-1998

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Hernandez-Gonzalez" (2007). *2007 Decisions.* Paper 651.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/651

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 06-1998 & 06-2130

UNITED STATES OF AMERICA,

Appellant in Appeal No. 06-1998

v.

MAGDALENO HERNANDEZ-GONZALEZ,

Appellant in Appeal No. 06-2130

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
Criminal No. 05-cr-00507
District Judge:  The Honorable Mary A. McLaughlin

Argued:  May 23, 2007

Before: CHAGARES, HARDIMAN, and TASHIMA,[*] Circuit
Judges

(Opinion Filed July 19, 2007)

_____

[*] The Honorable A. Wallace Tashima, Senior Circuit Judge,
United States Court of Appeals for the Ninth Circuit, sitting by
designation.

Richard J. Zack, Esq. (Argued)
Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Counsel for Appellant/Cross-Appellee United States


David L. McColgin, Esq. (Argued)
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106

Counsel for Appellee/Cross-Appellant Magdaleno Hernandez-Gonzalez

———

OPINION OF THE COURT

———


TASHIMA, Circuit Judge.

The United States appeals the sentence imposed on Magdaleno Hernandez-Gonzalez ("Hernandez") following his conviction under 8 U.S.C. § 1326(a) for being an alien found in the United States following deportation. The question we must answer is whether the date that the offense commenced, for purposes of calculating the criminal history score, is the date that Hernandez entered the United States, or the date that he was found in the United States by immigration authorities. Relying on our decisions in United States v. DiSantillo, 615 F.2d 128 (3d Cir. 1980), and United States v. Lennon, 372 F.3d 535 (3d Cir. 2004), the district court concluded that the relevant date was the date that Hernandez was found by immigration authorities. We conclude that DiSantillo and Lennon are distinguishable and hold that the date that the

2

offense commenced for purposes of calculating the criminal history score is the date that Hernandez entered the United States. We therefore vacate the sentence and remand for the district court to determine the date of entry and resentence accordingly.[1] We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

I.

Hernandez, a native and citizen of Mexico, legally entered the United States in 1990 when he was 18 years old. From 1990 to 1992, Hernandez suffered five convictions – possession of bad checks, driving under the influence, attempted grand theft, forgery, and possession of forged notes. In 1994, Hernandez pled *nolo contendere* to a charge of oral copulation by acting in concert with force and was sentenced to eight years in state prison. On January 6, 1998, Hernandez was paroled to immigration authorities and deported to Mexico.

Hernandez stayed in Mexico for approximately one year before reentering the United States illegally. He lived with his sister's family, and then with his girlfriend, in Norristown, Pennsylvania. In March 2005, police officers were called to Hernandez's residence following an altercation between Hernandez and his girlfriend. Officers arrested Hernandez after they saw cocaine in his pocket. Hernandez pled guilty to possession of cocaine and, following his hearing on that charge, he was arrested by immigration authorities.

Hernandez was indicted on one count of being found in the

---

[1]	Hernandez cross-appeals the district court's refusal to depart from the guideline range based on sentencing disparities between districts with fast-track programs and districts without them. Fast-track programs "allow defendants who violate § 1326 to receive lower sentences in exchange for waiving certain rights." United States v. Vargas, 477 F.3d 94, 98 n.8 (3d Cir.), reh'g denied, 481 F.3d 868 (3d Cir. 2007). Hernandez's argument is foreclosed by Vargas, in which we held that "a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable." Id. at 99.

3

United States following deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He pled guilty, and a Presentence Investigation Report ("PSR") was prepared.

A defendant's criminal history is calculated pursuant to § 4A1.2 of the United States Sentencing Guidelines ("USSG"). Section 4A1.2 provides, in pertinent part, that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted" in the criminal history score. USSG § 4A1.2(e)(2). The PSR relied on Hernandez's "confession to authorities that he immediately returned to the United States after his deportation in 1998," and his statement that he had been living and working in Norristown for approximately six years at the time of his PSR interview, to conclude that the "criminal conduct in this case began at least as early as January 1, 2000." The PSR accordingly included in the calculation of Hernandez's criminal history score his convictions that dated from 1990. Hernandez objected, arguing that the effective date of the offense was August 15, 2005, because that was the date the indictment charged he was found in the United States, and that his convictions that occurred more than ten years before this date should not be included in the calculation of his criminal history score. The government argued that it was undisputed that the latest Hernandez reentered the United States was January 1, 2000; therefore, that all of his convictions after January 1, 1990, should be included in the calculation of his criminal history score.

The district court agreed with Hernandez that the relevant question for determining the date of the offense was when he was found by immigration authorities. The government informed the court that immigration authorities first became aware that Hernandez was in the country in May 2004, and he was sentenced on the cocaine charge in August 2005. Relying on those dates, the court concluded that Hernandez's criminal history category was III, resulting in a guideline range of 46 to 57 months. The court sentenced Hernandez to a term of 46 months. This timely appeal and cross-appeal followed.

II.

4

We review the district court's interpretation of the guidelines de novo. United States v. Navarro, 476 F.3d 188, 191 (3d Cir. 2007). The district court's findings of fact are reviewed for clear error. Id.

III.

The government contends that the district court erred in concluding that Hernandez's instant offense did not commence until he was discovered by immigration authorities in May 2004. If the district court had relied on the date the PSR estimated that Hernandez reentered the United States, January 2000, to calculate Hernandez's criminal history, his five convictions between 1990 and 1992 would have been included in the criminal history calculation.

"Section 1326(a) contains three separate offenses, phrased in the disjunctive: (1) illegal re-entry, (2) attempted illegal reentry, and (3) being found illegally in the United States." Lennon, 372 F.3d at 537. Hernandez was convicted of the third offense, being found in the United States. We considered the date of the "found in" offense in DiSantillo and Lennon, but neither case addressed the issue we face here.

The question in DiSantillo was whether the statute of limitations had run prior to the return of an indictment for illegal reentry. The defendant, DiSantillo, was arrested and deported in 1962 when he was sixteen years old. He reentered the United States in 1970 on an immigrant visa, but, because of the earlier deportation, the government contended that his visa was improperly obtained and, in 1979, prosecuted him for illegal reentry. DiSantillo argued that the indictment was barred by the five-year statute of limitations for § 1326, because the limitations period began to run at the time he entered the United States in 1970. The government countered that the limitations period began to run when DiSantillo was found in the United States in 1976. We rejected the government's construction of the statute, reasoning that, "[u]nder the government's formulation, violation of § 1326 is a continuing offense effectively tolling the statute of limitations for as long as the alien remains illegally in the country." DiSantillo, 615 F.2d at 132.

5

We relied on the fact that DiSantillo reentered the United States through an official port of entry, reasoning that Congress' inclusion of the "found in" offense in the illegal entry statute indicated its intent to create

> a distinction between surreptitious crossing of the United States border and entry at a recognized INS port of entry. . . . Congress must have included the word "found" in § 1326 to alleviate the difficult law enforcement burden of finding and prosecuting this class of illegal aliens, who are already aware that they are in violation of the law as evidenced by their surreptitious entry, before the five year statute of limitations runs.

Id. at 135. Because DiSantillo entered through an official port of entry and filed a report with the INS every year, the government had "sufficient opportunities to discover DiSantillo's offense." Id. at 136. Reasoning that "[t]he critical event giving rise to this prosecution and making the offense complete" was DiSantillo's 1970 entry, we concluded that "the crime of illegal entry through a recognized INS port of entry after being arrested and deported is not a continuing offense." Id. We therefore held that "an alien may not be indicted under § 1326 more than five years after he entered or attempted to enter the United States through an official INS port of entry when the immigration authorities have a record of when he entered or attempted to enter." Id. at 137.

The question in Lennon was when the offense of being found in the United States was "committed" for purposes of determining which Guidelines version was applicable. Lennon, the defendant, was deported in 1993, and she illegally reentered the United States in 1994, using a pseudonym. She was apprehended by the INS in 2001 and pled guilty to being found in the United States in violation of § 1326. Lennon argued that the 1994 guidelines, rather than the 2001 guidelines, should have been used to calculate her sentence because her "found in" offense occurred when she illegally entered the United States in 1994.

Although Lennon's position seemed consistent with DiSantillo, we distinguished DiSantillo on the basis that

[t]he logic of DiSantillo-that immigration authorities should be imputed with "knowledge" of an alien's presence in the United States-does not extend to a case such as this, where Lennon affirmatively concealed her identity. To hold otherwise would actually favor the illegal entrants who affirmatively conceal their identities over those who honestly use their own names.

Lennon, 372 F.3d at 541. Relying on this distinction, we concluded that, "[w]here an alien unlawfully enters with a fictitious name, even through a recognized port of entry, he is 'found in' the United States when actually discovered." Id. Lennon's offense accordingly was committed when she was apprehended in 2001. Id.

In calculating Lennon's criminal history score, the district court had included "those of Lennon's offenses that occurred more than ten years before her 2001 'found' date-implicitly holding that 'found in' violations are continuing crimes." Id. at 538. However, the district court determined that the criminal history was overstated and therefore reduced her criminal history category in sentencing her.

Lennon raised the issue presented here, arguing that, if her offense was committed in 2001, the district court should not have considered her pre-1991 crimes in determining her sentence. We did not reach the issue, reasoning that any error in considering Lennon's pre-1991 crimes in calculating her criminal history was harmless because the district court based her sentence on the lower criminal history category. Id. at 541-42.

We noted the merit of the government's argument that being found in the United States is a continuing offense, stating that "the passage of time does not give rise to a de facto amnesty that legalizes an unlawful alien's presence." Id. at 541 n.8. We recognized that the question was "addressed, to a limited extent," in DiSantillo and that numerous courts had held to the contrary of DiSantillo, but declined to reexamine DiSantillo. Id.; see also id. at 541 n.9 (noting the government's argument that "there is no error because Lennon's offense was a continuing one, lasting from 1994 through 2001," and stating that "[t]his is arguably inconsistent with

DiSantillo, but we need not reach the question").

We conclude that both <u>DiSantillo</u> and <u>Lennon</u> are distinguishable from the instant case and that neither case addressed the issue presented here. First, we have interpreted <u>DiSantillo</u>'s holding as being limited to the statute of limitations context where immigration authorities were aware of the entry. <u>See</u> <u>id.</u> at 540 (stating that "<u>DiSantillo</u> held that illegal re-entry begins, for statute of limitations purposes, when the alien presents himself non-surreptitiously . . . at an open point of entry even though immigration personnel failed to react"); <u>see also</u> <u>United States v. Dixon</u>, 327 F.3d 257, 259 (3d Cir. 2003) ("In <u>DiSantillo</u>, we held that being found in the United States is not a continuing offense when the alien entered through a recognized port of entry, and therefore the five-year statute of limitations begins to run when the deported alien passed through the recognized port of entry."). <u>DiSantillo</u> itself limited its conclusion that the crime of illegal entry was not a continuing offense to the situation where entry is "through a recognized INS port of entry." <u>DiSantillo</u>, 615 F.2d at 136.

Second, <u>Lennon</u> specifically declined to address the question of whether the offense of being found in the United States was a continuing offense where the reentry was not known to immigration authorities. <u>See</u> <u>Lennon</u>, 372 F.3d at 541 n.8 (acknowledging that numerous courts had held that the "found in" offense is a continuing crime, but stating that "we need not confront the continued viability of <u>DiSantillo</u> in this case"). To the contrary, we reasoned in <u>Lennon</u> that the logic of <u>DiSantillo</u> does not apply where the alien entered surreptitiously, by, for example, concealing his or her identity, because "[t]o hold otherwise would actually favor the illegal entrants who affirmatively conceal their identities over those who honestly use their own names." <u>Id.</u> at 541.

Unlike DiSantillo, Hernandez reentered the United States surreptitiously. If his offense did not commence when he first entered the United States, this would present the anomalous situation of the alien committing the act of illegal entry, but then being free of criminal liability until he or she commits the act of being found in the country illegally. <u>See</u> <u>id.</u> at 541 n.8 (stating that "the passage of time does not give rise to a de facto amnesty that

8

legalizes an unlawful alien's presence"); United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001) ("It would be passing odd to say that Lopez had violated the statute when he entered but then was free of further criminal culpability until he was discovered by the INS."). DiSantillo accordingly does not control this case.

Finally, although Lennon stated that, in the case of a surreptitious reentry, the alien is "'found in' the United States when actually discovered" by immigration authorities, Lennon, 372 F.3d at 541, the relevant date for purposes of § 4A1.2(e)(2) is the "commencement of the instant offense." Lennon simply does not address the date the offense is commenced.

Section 4A1.2(e)(2) states that a prior sentence is to be counted in the criminal history score if it was imposed within ten years of the commencement of the instant offense. USSG § 4A1.2(e)(2). The Guideline commentary provides that, in determining the applicable time period, "the term 'commencement of the instant offense' includes any relevant conduct." Id., cmt. n.8 (citing USSG § 1B1.3 (Relevant Conduct)). Section 1B1.3 includes as relevant conduct all acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). This language indicates that the relevant conduct of entering the United States should be considered in determining when the offense of being found in the country was commenced. We therefore hold that the date the offense of being "found in" the United States commenced, for purposes of calculating the defendant's criminal history under § 4A1.2, is the date that the defendant entered the United States, not the date that he or she was discovered by immigration authorities. Our holding is in accord with decisions of the Seventh and Eleventh Circuits that have addressed the precise issue presented here. See Lopez-Flores, 275 F.3d 661; United States v. Castrillon-Gonzalez, 77 F.3d 403 (11th Cir. 1996).

In Lopez-Flores, the defendant's sentence for being found in the United States was enhanced based on a previous conviction. The indictment charged the defendant with being found in the United States on November 7, 2000, which was more than ten years after the prior conviction. However, the district court held that the

"found in" offense began when the defendant illegally reentered the United States sometime before April 1999, which was within ten years of the prior conviction. The Seventh Circuit stated:

> All the courts to address the question have held that at least in the case of surreptitious reentry, as in this case, the "found in" offense is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense. This is clearly correct. Section 1326(a) punishes entering, attempting to enter, and being found in the United States after being deported. We think "found in" must have the force of "present in" rather than "discovered by the INS to be in." The date of discovery has no significance so far as culpability is concerned, though it may bear on the running of the statute of limitations. It would be passing odd to say that Lopez had violated the statute when he entered but then was free of further criminal culpability until he was discovered by the INS.

Lopez-Flores, 275 F.3d at 663 (citations omitted).

In Castrillon-Gonzalez, the defendant was arrested for being found in the United States illegally in December 1993. However, the date of his illegal entry into the United States was in February 1991. The issue was whether the district court properly enhanced his sentence for a 1982 conviction, which was more than ten years before his arrest for the "found in" charge, but less than ten years before the date of his entry. The Eleventh Circuit reasoned that the defendant had committed the offense of entering the United States illegally in February 1991, even though that was not the offense with which he was charged and to which he pled. Castrillon-Gonzalez, 77 F.3d at 406. The "found in" crime was commenced by the illegal entry in February 1991, and it was not completed until his December 1993 arrest. Id. The court recognized that "[t]he distinction between completion and commencement is critical" because § 4A1.2(e)(2) "counts any sentence imposed 'within ten years of the defendant's *commencement* of the instant offense.'" Id. (quoting USSG § 4A1.2(e)(2)).

Section 4A1.2(e)(2)'s use of the term "commencement" and its reliance on relevant conduct in determining the applicable time

10

period support our holding that the offense of being found in the United States commences on the date the defendant enters the United States. This interpretation also is consistent with cases that hold that the date of the offense charged in the indictment is not necessarily the relevant date for purposes of determining when the charged offense was commenced in calculating criminal history points. See, e.g., United States v. Rosenkrans, 236 F.3d 976, 978 (8th Cir. 2001) (holding that the district court properly assessed criminal history points for a 1987 offense because the "instant offense" for purposes of § 4A1.2(e)(2) was not limited to the 1998 transaction underlying the conviction but included earlier drug transactions that were relevant conduct); United States v. Kennedy, 32 F.3d 876, 890 (4th Cir. 1994) (stating that "sentencing courts may consider preindictment activity to establish the starting date of the offense, and then use that date to calculate the time period for which prior sentences are counted," under § 4A1.2(e)(1)); United States v. Kayfez, 957 F.2d 677, 678 (9th Cir. 1992) (per curiam) (upholding the district court's reliance on the date the defendant made counterfeit notes, rather than the date the indictment charged he possessed the notes, to assign criminal history points, stating that the date alleged in the indictment is relevant only if the statute of limitations is implicated or if the defendant shows prejudice in the preparation of his defense by the listing of a specific date in the indictment).

Our conclusion that Hernandez's "found in" offense commenced when he entered the United States, rather than when he was found by immigration authorities, does not end the dispute. Hernandez contends that the government has failed to prove that his entry date is January 1, 2000, because of a statement in the PSR that he visited his parents, who live in Mexico, after that date.

The only issue before the district court was the legal question of whether the date of the commencement of the offense was the date of entry or the date charged in the indictment. The actual date of entry is a factual question that was not considered by the district court. We therefore remand in order for the district

11

court to determine the date of entry and resentence accordingly.[2]

## IV.

For the foregoing reasons, we will reverse the sentencing order of the district court and remand for further proceedings consistent with this opinion.

---

[2] We affirm the district court's refusal to depart from the guideline range based on the district's absence of a fast-track program.