**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-5222**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARTURO HERNANDEZ-FRIAS, a/k/a Sergio Armando Andrade-Lopez,
a/k/a Arturo Fries Hernandez,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Robert E. Payne, Senior
District Judge. (3:09-cr-00211-REP-1)

———————

Argued:  March 20, 2012               Decided:  April 12, 2012

———————

Before MOTZ and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

———————

Affirmed by unpublished per curiam opinion

———————

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Alexandria, Virginia, for Appellant.  Richard Daniel
Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia,
for Appellee.  **ON BRIEF:** Samuel P. Simpson, V, MONTGOMERY &
SIMPSON, LLLP, Richmond, Virginia, for Appellant.  Neil H.
MacBride, United States Attorney, Alexandria, Virginia, for
Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Arturo Hernandez-Frias pleaded guilty to being "found in" the United States after previously being deported subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a). Hernandez-Frias appeals his sentence, challenging both the calculation of his criminal history points under the U.S. Sentencing Guidelines and the district court's failure to provide an individualized explanation for his sentence. For the reasons that follow, we affirm.

I.

Hernandez-Frias, a native of Mexico, legally entered the United States on a work permit when he was a teenager. In 1990, however, he was convicted in California of a felony offense for drug distribution, resulting in the cancellation of his work permit. In 1993, Hernandez-Frias was convicted of another drug-related felony offense.

In 2000 and again in 2004, U.S. immigration authorities arrested Hernandez-Frias and deported him from the United States to Mexico. Each time, following his return to Mexico, Hernandez-Frias illegally reentered the United States. On July 23, 2005, Hernandez-Frias was arrested in Virginia for driving under the influence ("DUI"); a state court subsequently convicted him of the offense. He incurred another DUI

2

conviction in Virginia in 2009. While he was in jail for his second DUI conviction, on June 30, 2009, U.S. immigration authorities discovered that he was in the United States and charged him with the instant offense.

Hernandez-Frias pleaded guilty to one count of being "found in" the United States after previously being deported subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a). In preparing Hernandez-Frias's presentence report ("PSR"), the probation officer determined that Hernandez-Frias's offense commenced on July 23, 2005 -- the date on which Hernandez-Frias was arrested for his first DUI in Virginia.[1] The probation officer then used this date to calculate Hernandez-Frias's criminal history score pursuant to the U.S. Sentencing Guidelines ("U.S.S.G.").

Based on the July 23, 2005 commencement date, the probation officer added criminal history points for Hernandez-Frias's drug conviction in 1990. See U.S.S.G. §§ 4A1.1(a), 4A1.2(e)(1) (directing the addition of three criminal history points for "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's

---

[1] The PSR does not explain the probation officer's choice of July 23, 2005 as the commencement date. The reason is obvious, however: it was the first date after Hernandez-Frias's 2004 deportation for which the record conclusively established his illegal presence in the United States.

3

commencement of the instant offense"). Additionally, the probation officer added two criminal history points because he found that Hernandez-Frias committed the instant offense while under the three-year "good behavior" sentence imposed in September 2005 for his first DUI conviction. See U.S.S.G. § 4A1.1(d) (directing the addition of two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence"). With the addition of these points, and others not relevant to this appeal, the probation officer calculated that Hernandez-Frias had a criminal history category of V.

In the district court, neither party initially objected to the presentence report. At the sentencing hearing, however, when the court asked if either party had any objections, defense counsel stated that Hernandez-Frias "has a question with regard, apparently, to use of his prior record in [the] calculation of his sentencing guidelines, [in that] some of the items on the record are old." Counsel continued that the objection "has to do with when this criminal conduct started, how long before, you know, the 15 years' issue." Defense counsel offered that he did not "think we've got a valid objection" on that issue. The district court granted a recess for defense counsel and Hernandez-Frias to confer. After the recess, Hernandez-Frias stated on the record that he had no objections. The court then

4

adopted the presentence report as tendered by the probation officer, which yielded an advisory Guidelines range of 70 to 87 months.

Upon hearing the parties' sentencing arguments, the district court sentenced Hernandez-Frias to 72 months in prison. The court stated that it had considered the 18 U.S.C. § 3553(a) factors and that it believed that a within-Guidelines sentence would accomplish the goals of those factors. After announcing the sentence, the court informed Hernandez-Frias that "it would have been perfectly legitimate to have imposed the punishment of 87 months, but I did not feel it was a justifiable use of the public funds to incarcerate you for the extra 15 months. And if you don't learn in 72 months, you aren't going to learn in 87 months that you can't come back to this country without legal permission."

Hernandez-Frias timely noted this appeal.

II.

A.

Title 8, section 1326 of the U.S. Code prohibits aliens who have been previously removed from this country from "enter[ing], attempt[ing] to enter, or [being] . . . found in, the United States" without permission from the U.S. Attorney General. Hernandez-Frias pleaded guilty to the offense of being "found

in" the United States.  On appeal, Hernandez-Frias argues that the district court miscalculated his criminal history score under the Sentencing Guidelines because it used the wrong date for the commencement of his offense.  He asserts that the offense of being "found in" the United States commences on the date that <u>immigration authorities</u> discover a defendant in the United States.  Thus, according to Hernandez-Frias, his offense commenced on June 30, 2009 -- <u>not</u> July 23, 2005 as stated in his PSR.  If his offense commenced on June 30, 2009, he notes that the district court should not have assessed criminal history points under U.S.S.G. § 4A1.1(a) or U.S.S.G. § 4A1.1(d) and the exclusion of these points would have produced a lower applicable Guidelines range.

In assessing a challenge to a district court's application of the Guidelines, we typically review the court's factual findings for clear error and its legal conclusions de novo. <u>United States v. Allen</u>, 446 F.3d 522, 527 (4th Cir. 2006). Because Hernandez-Frias did not object to the calculation of his criminal history score before the district court, we review Hernandez-Frias's claim for plain error.[2]  To prevail, Hernandez-

---

[2] The Government contends that by withdrawing his objection at the sentencing hearing Hernandez-Frias waived his claim entirely.  <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 733 (1993) (comparing "waiver" and "forfeiture").  Hernandez-Frias counters that this court should not find waiver because the record does (Continued)

Frias must demonstrate that the district court committed error, that the error was plain, and that the error affected Hernandez-Frias's substantial rights. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). We hold that he cannot do so; the district court did not plainly err in calculating his criminal history score.

The first criminal history enhancement at issue, § 4A1.1(a), instructs the district court to add three points to the defendant's criminal history score for each prior sentence of imprisonment exceeding thirteen months. U.S.S.G. § 4A1.1(a). Such a prior sentence counts only if it "was imposed within fifteen years of the defendant's commencement of the instant offense" or "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1). The Guidelines commentary explains that "the term 'commencement of the instant offense' includes any relevant conduct." Id. cmt. n.8 (citing U.S.S.G. § 1B1.3(a)(1)).

Abundant case law holds that the "relevant conduct" of being "found in" the United States commences on the date that

not make clear that Hernandez-Frias's objection at the hearing was the same as the claim he now raises on appeal. Indeed, defense counsel's explanation to the district court of Hernandez-Frias's objection was hardly precise. We need not address this dispute, however, because we reject Hernandez-Frias's claim even under plain error review.

7

the defendant illegally reenters the country and continues until he or she is discovered by immigration authorities. See, e.g., United States v. Delgado-Hernandez, 646 F.3d 562, 567 (8th Cir. 2011); United States v. Hernandez-Guererro, 633 F.3d 933, 937 (9th Cir. 2011); United States v. Hernandez-Gonzalez, 495 F.3d 55, 60-61 (3d Cir. 2007); United States v. Ruiz-Gea, 340 F.3d 1181, 1189 (10th Cir. 2003); United States v. Mendez-Cruz, 329 F.3d 885, 889 (D.C. Cir. 2003); United States v. Lopez-Flores, 275 F.3d 661, 663 (7th Cir. 2001). In accord with our sister circuits, we conclude that the offense of the defendant, Hernandez-Frias, commenced upon his reentry to the United States, not when he was "found" in the United States by immigration authorities. Because the record does not disclose the precise date of Hernandez-Frias's reentry, the district court reasonably used the date of his July 23, 2005 DUI as the commencement date -- the first date that the record conclusively establishes Hernandez-Frias's illegal presence in the United States following his 2004 deportation.

Using July 23, 2005 as the offense commencement date, the district court appropriately added criminal history points pursuant to § 4A1.1(a) for Hernandez-Frias's 1990 drug conviction. Hernandez-Frias's 1990 drug conviction carried a

sentence exceeding thirteen months[3] and it resulted in his incarceration within fifteen years of July 23, 2005. Therefore, the district court properly assessed criminal history points for that prior conviction under § 4A1.1(a).

The district court also properly assessed criminal history points because Hernandez-Frias committed part of his § 1326 offense while under a probationary sentence for his 2005 DUI conviction. Section 4A1.1(d) and its commentary instruct the district court to add two points to a defendant's criminal history score "if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence." U.S.S.G. § 4A1.1(d) cmt. n.4. Hernandez-Frias's 2005 DUI conviction carried a three year good-behavior sentence. Thus, Hernandez-Frias's illegal presence in the United States overlapped with his good-behavior sentence and the district court appropriately added criminal history points under § 4A1.1(d).

---

[3] Hernandez-Frias's original sentence for the 1990 drug conviction was incarceration for 240 days followed by 36 months of probation. But, on September 21, 1990, Hernandez-Frias received an additional 180 days incarceration for a probation violation. Under U.S.S.G. § 4A1.2(k)(1), such revocation sentences are added to the original term of imprisonment for the purposes of computing criminal history points, thereby carrying Hernandez-Frias over the thirteen month threshold.

B.

We also reject Hernandez-Frias's alternative argument that, even if his offense commenced upon his illegal reentry to the United States, his offense could not have commenced prior to December 2007. The unrebutted evidence in the record establishes that Hernandez-Frias was in the United States as of July 23, 2005. But based on a stray statement in his PSR, Hernandez-Frias asserts that his most recent reentry to the United States occurred in December 2007 or later. He did not raise this point in the district court, and we reject his argument as lacking adequate factual support to show plain error.

Hernandez-Frias's assertion that he left the United States after July 23, 2005 rests entirely on the single statement in his PSR that he "last saw his children in December 2007." Because his children reside in Mexico, he claims that this statement proves that he visited Mexico in December 2007. But Hernandez-Frias's argument would require us to make the circumstantial inference that simply because Hernandez-Frias saw his children in December 2007, he must have traveled to Mexico to do so. But, of course, it is also possible that the children

came to the United States.[4] And Hernandez-Frias offered no other evidence of his alleged return to Mexico. On this record, the PSR's lone nonspecific reference to seeing his children is far from sufficient to establish that the district court <u>plainly</u> erred by not dating the commencement of Hernandez-Frias's offense to December 2007.

III.

Finally, Hernandez-Frias argues that the district court committed reversible error in failing to provide an individualized explanation of his criminal sentence in light of the factors enumerated under 18 U.S.C. § 3553(a). <u>See</u> <u>United States v. Carter</u>, 564 F.3d 325, 330 (4th Cir. 2009) ("Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an 'individualized assessment' based on the particular facts of the case before it."); <u>see also</u> <u>United States v. Lynn</u>, 592 F.3d 572, 576, 581 (4th Cir. 2010). The Government concedes that the district court committed procedural error in providing an inadequate explanation for Hernandez-Frias's sentence, but

---

[4] The PSR additionally states that Virginia Steel Erectors employed Hernandez-Frias "[f]rom 2000 until his arrest for the instant offense," suggesting his continuous presence in the United States.

11

contends that the error was harmless. Gov't Br. at 43. We agree.

As a threshold matter, we note that Hernandez-Frias did properly preserve an objection to his sentence. To preserve a challenge to an insufficiently explained sentence, "the defendant need not specifically object after the court has pronounced a sentence, but he must at some point in the proceedings 'draw[] arguments from § 3553 for a sentence different than the one ultimately imposed . . . .'" United States v. Powell, 650 F.3d 388, 395 (4th Cir. 2011) (quoting Lynn, 592 F.3d at 576). By requesting a sentence "at the low end of the advisory guidelines" and the "minimum sentence recommended by the advisory guidelines," Hernandez-Frias effectively requested a sentence of 70 months. The district court, however, sentenced him to 72 months incarceration. Accordingly, Hernandez-Frias preserved an objection to his sentence.

Because he preserved an objection, we apply harmless error review in considering whether the district court's procedural error warrants reversal. Lynn, 592 F.3d at 579. Under that standard, "the government may avoid reversal only if it demonstrates that the error did not have a substantial and injurious effect or influence on the result and we can say with fair assurance, that the district court's explicit consideration

12

of [the defendant's] arguments would not have affected the sentence imposed." United States v. Boulware, 604 F.3d 832, 840 (4th Cir. 2010) (internal quotation marks and alterations omitted). The Government has satisfied that burden in this case.

At sentencing, Hernandez-Frias made several straightforward arguments under 18 U.S.C. § 3553(a), namely that his age, the age of his prior convictions, and the impact of his incarceration on his family counseled in favor of a lesser sentence. The record in this case indicates that the district court considered and appreciated Hernandez-Frias's § 3553(a) arguments. After hearing Hernandez-Frias's arguments and personal allocution, the court stated that it had considered the § 3553(a) factors and believed that a within-Guidelines sentence for Hernandez-Frias would accomplish the objectives of § 3553(a).[5] Then, the district court sentenced Hernandez-Frias to 72 months imprisonment -- only two months above the sentence Hernandez-Frias requested (and fifteen months below the sentence requested by the Government).

---

[5] Additionally, earlier in the sentencing hearing, the district court granted a recess for Hernandez-Frias and his counsel to confer over a possible objection to the age of his prior convictions, suggesting that the court was aware that the staleness of Hernandez-Frias's prior convictions was a relevant consideration.

Hernandez-Frias raised uncomplicated, relatively weak sentencing arguments. Although the district court erred by failing to address them specifically on the record, we believe that a remand for resentencing would not change the sentence imposed given that the district court sentenced Hernandez-Frias to nearly the sentence that he requested. Boulware, 604 F.3d at 840 (declining to remand for resentencing where such a remand would be "pointless"). Indeed, on this record, we believe that the district court undertook the analysis required by Carter, but simply failed to make that analysis explicit. Under these circumstances, the district court's error was harmless.

Accordingly, we affirm the judgment of the district court.

AFFIRMED

14