**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4403

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

       v.

ANDRES ABELINO AYON-BRITO, a/k/a Hugo Ayon-Brito, a/k/a Joel Diaz Garcia,

              Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, District Judge.  (1:18-cr-00259-AJT-1)

Argued:  October 30, 2020                         Decided:  December 2, 2020

Before NIEMEYER and KEENAN, Circuit Judges, and Richard E. MYERS II, United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Keenan and Judge Myers joined.

**ARGUED:**  Geremy C. Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Heather Diefenbach Call, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Caroline S. Platt, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Daniel T. Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Andres Abelino Ayon-Brito was prosecuted and convicted in the Eastern District of Virginia of reentering the United States without permission after having been removed, in violation of 8 U.S.C. § 1326(a). He appeals the district court's denial of his pretrial motion to dismiss the indictment based on improper venue.

Section 1326(a) provides that any previously deported alien who "enters, attempts to enter, or is at any time *found in*, the United States" without first receiving permission shall be punished. (Emphasis added). Ayon-Brito argues that even though the indictment alleged that he was first "encountered" after his reentry by law enforcement officers in the Eastern District of Virginia, it also alleged, as an element of the offense, that he was "found" in the Middle District of Pennsylvania where he was first accurately identified. Therefore, he asserts, the crime charged was committed in the Middle District of Pennsylvania, and venue was appropriate only there. *See* 8 U.S.C. § 1329 (establishing venue for a § 1326 violation in the district where the violation "occur[ed]").

In denying Ayon-Brito's motion challenging venue, the district court concluded that his violation of § 1326(a) was a continuing offense that *began* when he reentered the United States and *continued* wherever he was present *until* he was found and arrested. The court thus held that because Ayon-Brito also committed the crime in Virginia, he could be prosecuted and tried in Virginia.

For the reasons that follow, we affirm.

2

# I

Ayon-Brito is a native and citizen of Mexico who was removed from the United States to Mexico on August 13, 2010, and again on March 1, 2013. He never applied for or received permission from the Attorney General to reenter the United States.

At some unknown time and place after his removal in 2013, Ayon-Brito reentered the United States and went to Virginia, where he had previously lived and worked. While in Virginia, he encountered law enforcement officers in September, October, and November 2014 while trafficking in drugs. On each occasion, he used an alias. About a month later, he was arrested in the Middle District of Pennsylvania, again for drug trafficking. Following this arrest in Pennsylvania, however, his true identity and illegal status were discovered, and federal law enforcement were notified, rendering him "found" there. He was subsequently returned to Virginia, where he was convicted of state crimes and sentenced to a term of imprisonment.

While Ayon-Brito was serving his Virginia sentence, a federal grand jury in the Eastern District of Virginia returned an indictment charging him with a violation of 8 U.S.C. § 1326(a). The indictment alleged that on December 14, 2014, in Cumberland County, Pennsylvania, Ayon-Brito "was found in the United States after having been removed . . . without having obtained [permission]." It also alleged that before Ayon-Brito was "found" in Cumberland County, he was "encountered by members of the Fairfax County Police Department" on three separate occasions within the Eastern District of Virginia.

3

Ayon-Brito filed a motion to dismiss the indictment, contending that based on its allegations, the Eastern District of Virginia was not a proper venue for his prosecution and trial. Relying on the § 1326 offense charged in the indictment, which was based on his being "found in" Cumberland County, Pennsylvania, he argued that he committed the offense there. Accordingly, he maintained that under § 1326(a)'s venue provision, the only proper venue for prosecution of the crime was the Middle District of Pennsylvania. *See* 8 U.S.C. § 1329 (establishing venue for § 1326 violations where the violation "occur[red]"). The district court denied Ayon-Brito's motion, concluding that because a § 1326 violation is a continuing offense, venue was proper in the Eastern District of Virginia.

After denying Ayon-Brito's motion, the district court conducted a bench trial — as Ayon-Brito waived his right to a jury trial — and found Ayon-Brito guilty, sentencing him to six months' imprisonment, to run consecutively to his previously imposed sentence for state crimes.

From the judgment of the district court, dated May 17, 2019, Ayon-Brito filed this appeal, challenging only the district court's pretrial ruling on venue.

II

Ayon-Brito's motion to dismiss the indictment for improper venue accepted the indictment's allegations for purposes of the motion. He contended that because the indictment alleged that the violation was based on the "found" element of a § 1326(a) violation, he committed the alleged crime in the Middle District of Pennsylvania, i.e.,

4

where he was found. Accordingly, he argued that under the § 1329 venue provision, he should have been prosecuted and tried in the Middle District of Pennsylvania. *See* 8 U.S.C. § 1329 (providing venue for § 1326 violations "at any place in the United States at which the violation may occur"). The district court denied Ayon-Brito's motion, concluding that:

> Because [a] "found in" violation of 1326 is a continuing offense, venue is proper in any district in which such offense was begun, continued, or completed, and this would include any district in which the defendant was present between the time of his illegal reentry and the time he was found by immigration authorities.

The court thus held that inasmuch as the indictment alleged that Ayon-Brito had been in the Eastern District of Virginia, his presence there continued his reentry violation until he was "found," and venue for prosecution and trial was appropriate in that district.

Venue is based on the right of a defendant to be prosecuted and tried in a location that serves his convenience and the convenience of other parties and witnesses, while also promoting judicial efficiency. Thus, venue principles focus on some connection with either the parties or the events giving rise to the litigation, so as to guard against "needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense." *United States v. Johnson*, 323 U.S. 273, 275 (1944). Such provisions also "protect defendants from the bias . . . that may attend trial in a forum other than the one in which the crime was committed." *United States v. Rowe*, 414 F.3d 271, 277 (2d Cir. 2005). "Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that 'The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed.'" *Johnson*, 323 U.S. at 275 (quoting U.S. Const. art. III, § 2, cl. 3); *see also* U.S. Const. amend. VI (providing

5

that criminal defendants have the right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed"); Fed. R. Crim. P. 18 (*same*).

And for violations of 8 U.S.C. § 1326 in particular, Congress has established venue — consistent with the Constitution — "at any place in the United States at which the violation may *occur*." 8 U.S.C. § 1329 (emphasis added).[1] And when a violation occurs in more than one district — such as where the elements of the offense are satisfied in different districts or where the offense by its nature is a continuing offense — venue is appropriate in any district in which the violation "was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1061–62 (9th Cir. 2000).

The question thus presented in this case is where was Ayon-Brito's violation of § 1326(a) committed — or, when posed with § 1329's language, where did it occur. And the answer to that question turns on the nature of the offense, focusing on its elements. *See Richardson v. United States*, 526 U.S. 813, 818–19 (1999) (noting that a "violation" of a criminal statute refers to the satisfaction of the "separate element[s]" of the offense); *United*

---

[1] Section 1329 also establishes venue for § 1326 violations "at any place in the United States . . . at which the person charged . . . may be *apprehended*." (Emphasis added). While we do not consider for application this portion of the venue provision, it nonetheless might appear to be in tension with the Constitution's where-committed requirement. But when it is understood that a violation of § 1326 is an ongoing violation committed wherever the defendant is voluntarily present after reentry, the place where the defendant is "apprehended" would be consistent with where the crime was "committed." Indeed, § 1329's inclusion of a venue where the defendant is apprehended is itself indicative of Congress's intent that a § 1326 violation is ongoing until the defendant is found or, as used in § 1329, apprehended.

6

*States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (noting that to determine venue, a court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts"); *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (same); *Ruelas-Arreguin*, 219 F.3d at 1061 (same). Therefore, we begin with determining the elements of the offense to identify the "essential conduct elements," *Rodriguez-Moreno*, 526 U.S. at 280, to then be able to assess where those conduct elements were satisfied for purposes of determining venue.

Section 1326(a) provides that "any alien who . . . enters, attempts to enter, or is at any time found in, the United States" without permission after having previously been "deported or removed" from the United States shall be punished. 8 U.S.C. § 1326(a). Thus, the elements of the offense are: (1) that the defendant is an alien; (2) that he was deported or removed from the United States; (3) that he thereafter reentered (or attempted to reenter) the United States; and (4) that he lacked permission to do so. *See United States v. Ayala*, 35 F.3d 423, 425–26 (9th Cir. 1994); *see also United States v. Tovias-Marroquin*, 218 F.3d 455, 456–57 (5th Cir. 2000); *United States v. Barragan-Cepeda*, 29 F.3d 1378, 1381 (9th Cir. 1994). Under this formulation, the "found" term in the statute is not employed to define an element. As the Seventh Circuit explained:

> The point of using a word such as "found" in § 1326(a)(2) is to avoid any need to prove where and when the alien entered; the offense follows the alien. Just as it makes perfect sense to say that "the lousewort is found in all 50 states" so it makes sense — if it is not an inevitable reading of the statute — to say that the alien is "found" *wherever he is*.

\*       \*       \*

7

[Thus,] the statutory language suggests [that] . . . the alien commits the offense wherever he goes. The crime is *being* in the United States and is not limited to the instant at which a federal agent lays hands on the person and a lightbulb in the agent's head illuminates the mental sign "This guy's an illegal alien."

*United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 460 (7th Cir. 2006). Or stated somewhat differently, the "reentry" element of the crime is established whenever the alien is found, "*wherever he is. . . .* The crime is *being* in the United States." *Id.* (first emphasis added). In this way, "entry" is "embedded" in the term "found" because "[a]n 'entry' into the United States is required before a person is 'found in' the United States." *Ruelas-Arreguin*, 219 F.3d at 1061. "Found" is thus simply a prosecutorial authorization broadening the proof sufficient to establish "reentry."

Moreover, because "found" does not itself refer to an act or conduct of the defendant, it does not describe a conduct element.[2] It has been long established "that criminal penalties may be inflicted only if the accused has *committed some act*, has *engaged in some behavior*, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus*." *Ayala*, 35 F.3d at 426 (emphasis added) (quoting *Powell v. Texas*, 392 U.S. 514, 533 (1968) (plurality opinion)); *see also Tovias-Marroquin*, 218 F.3d at 457. And the *actus reus* of a § 1326 violation is the defendant's "*re-enter[ing]* the United States without permission." *Ayala*, 35 F.3d at

---

[2] Of course, crimes also have elements that are not conduct elements, such as *mens rea* and causation. But for purposes of determining venue, we must identify the "essential *conduct* elements" and "then discern the location of the[ir] commission." *Rodriguez-Moreno*, 526 U.S. at 280, 279 (emphasis added).

426 (emphasis added).  In short, the conduct element of a § 1326 violation is "entry" (or "attempted entry"), not "found."

With this understanding of "found" in § 1326(a), it is apparent that Congress included the term to extend the scope of the conduct element "entry" to when and where the alien is found, thus creating a continuing offense centered on the alien's entry into the United States and presence therein until found.  *See Rodriguez-Rodriguez*, 453 F.3d at 460. This follows from the operative language of § 1326(a), which punishes the conduct of a previously deported alien who "enters [or] attempts to enter" the United States until "*at any time*," he is "found in[] the United States" as a result of the entry.  8 U.S.C. § 1326(a)(2) (emphasis added); *see Find*, v., Oxford English Dictionary Online (Sept. 2020) (defining passive form of verb "found" as "[t]o be identified as present; to exist; to occur; to be located at a specific site"); *see also United States v. Are*, 498 F.3d 460, 464 (7th Cir. 2007) (noting that the prohibited conduct of reentry "continues to the time when [the defendant] is arrested for the offense"); *United States v. Villarreal-Ortiz,* 553 F.3d 1326, 1330 (10th Cir. 2009) (a § 1326(a) offense "is first committed when the defendant voluntarily reenters the country and continues to be committed until the defendant is 'found'").  Indeed, this continuing nature of the offense is nearly universally recognized.  *See United States v. Hernandez-Gonzalez*, 495 F.3d 55, 61–62 (3d Cir. 2007); *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996); *United States v. Jimenez*, 605 F.3d 415, 422 (6th Cir. 2010); *United States v. Rivera-Mendoza*, 682 F.3d 730, 733 (8th Cir. 2012); *Ruelas-Arreguin*, 219 F.3d at 1061; *United States v. Scott*, 447 F.3d 1365, 1369 (11th Cir. 2006); *United States v. Mendez-Cruz*, 329 F.3d 885, 889 (D.C. Cir. 2003).

At bottom, we hold that § 1326(a) creates a continuing offense, which begins with a previously deported alien's reentry (or attempted reentry) into the United States and continues until the alien is found. And because Congress created a continuing offense, "the locality of the crime . . . extend[s] over the whole area through which force propelled by an offender operates." *United States v. Cores*, 356 U.S. 405, 408 (1958) (cleaned up); *Johnson*, 323 U.S. at 275 (same). For purposes of venue, therefore, a violation of § 1326(a) may be prosecuted not only where the defendant enters or attempts to enter the United States but also at any place that he is present thereafter until he is found.

Ayon-Brito's entire argument to the contrary rests on his assumption that "found," as used in the statute, is a discrete element of a § 1326(a) offense and that that element was satisfied in this case in the Middle District of Pennsylvania, where law enforcement officers first identified his real name and his illegal status. *See Are*, 498 F.3d at 465 (describing "found" as to require discovery of the alien's identity and illegal status). But the assumption that "found" is a conduct element of the offense, is, as already noted, faulty. The term "found" instead describes the conclusion of an alien's unlawful reentry, which is the operative conduct element.

In this case, the indictment charged that Ayon-Brito was an alien who had been removed from the United States in March 2013 and reentered thereafter without permission; that in 2014 he was "encountered by" Fairfax County police in the Eastern District of Virginia on three separate occasions — in September, October, and November 2014; and that he was "found" in Cumberland County, Pennsylvania, on December 14, 2014. The offense charged thus began at some unknown point in time and place after

10

Ayon-Brito's removal *when he reentered* the United States without permission, *and it continued* thereafter until he was ultimately found and apprehended in Pennsylvania. As a consequence, Ayon-Brito was appropriately prosecuted in the Eastern District of Virginia, where he was present during his continuing violation of § 1326(a). *See Cores*, 356 U.S. at 408; 8 U.S.C. § 1329.

\* \* \*

It is well understood that regulating the appropriate venue for criminal prosecutions and trials serves an important policy of procedural fairness, as it takes into account the convenience of the parties, witnesses, and victims and aspires to the "prompt administration of justice." Fed. R. Crim. P. 18. Moreover, the Sixth Amendment adds gravitas to venue, linking criminal-trial venues to the jury-trial right by providing that a criminal defendant has the right to be tried by an impartial jury "of the State and district wherein the crime [was] committed." U.S. Const. amend. VI.

Our ruling today compromises none of these values. To the contrary, it increases the number of available venues, approving, in addition to Ayon-Brito's argued-for venue, the venue where he lived and worked. If he believed that he faced prejudice or inconvenience in the Eastern District of Virginia, he could have sought a transfer to the Middle District of Pennsylvania. *See* Fed. R. Crim. P. 21. But he did not do so. He elected a bench trial in Virginia and, by all accounts, was dealt with fairly; he has made no complaint otherwise.

The judgment of the district court is

AFFIRMED.

11