**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4652

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OMAR VILLARREAL SILVA, a/k/a Nolberto Ruiz Trinidad, a/k/a Nolberto Trinidad Ruiz,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. M. Hannah Lauck, District Judge. (3:17-cr-00125-MHL-1)

Argued: May 9, 2019                                    Decided: July 25, 2019

Before NIEMEYER, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Keenan and Judge Quattlebaum joined.

**ARGUED:** Joseph Stephen Camden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, S. David Schiller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Omar Villarreal Silva, a citizen of Mexico, was, during a traffic arrest on August 6, 2017, found in the United States after having been removed following conviction for a felony. A grand jury indicted him for violating 8 U.S.C. § 1326(a), (b)(1), which punishes "any alien who has been . . . removed . . . and thereafter . . . is at any time found in the United States" and which enhances the penalty when the "removal was subsequent to a conviction for . . . a felony."

Villarreal filed a motion to dismiss the indictment, challenging the validity of his underlying removal, which was an element of the § 1326 offense. He contended that during the removal, which was an expedited removal conducted under 8 U.S.C. § 1225(b)(1)(A)(i), he was denied procedural due process and therefore that the removal "was fundamentally unfair." 8 U.S.C. § 1326(d)(3). The district court observed that neither party had addressed the "relevance of 8 U.S.C. § 1225(b)(1)(D)" — which provides that in a § 1326 prosecution, the court "shall not have jurisdiction to hear any claim attacking the validity of an order of removal" issued under the expedited removal provision — and requested briefing on the constitutionality of that section insofar as it prohibited any challenge to the validity of the removal element of Villarreal's § 1326 prosecution. Following briefing, the court held that § 1225(b)(1)(D) was unconstitutional and that Villarreal was entitled to a due process review of his prior expedited removal order. On conducting that review, however, the court held that Villarreal failed to establish that the removal was fundamentally unfair and accordingly denied his motion to dismiss.

Reserving review of the district court's denial of his motion to dismiss, Villarreal pleaded guilty, and the district court sentenced him to 21 months' imprisonment.

For the reasons that follow, we affirm.

I

Villarreal has a long record of entering the United States illegally and committing crimes while in the United States. On March 4 and March 14, 1998, and on March 18, July 26, and July 28, 1999, Villarreal was apprehended by U.S. Border Patrol agents, processed as a "voluntary return" rather than placed in removal proceedings or prosecuted, and returned to Mexico. In addition to those five illegal entries, Villarreal entered illegally at sometime thereafter for a sixth time, as he was arrested and subsequently convicted on August 19, 2000, in Winston-Salem, North Carolina, for discharging a firearm inside city limits. Several months later, he was again arrested in Winston-Salem for robbery with a dangerous weapon and resisting an officer and, on February 10, 2001, was convicted of resisting arrest. On January 16, 2008, he was convicted in Chesterfield County, Virginia, for driving while intoxicated and identity theft. In 2009 and 2014, for a second and third time, he was again convicted in Chesterfield County for driving while intoxicated. Following the third DWI conviction, Villarreal was removed to Mexico on September 11, 2014.

Two months later, on November 20, 2014, Villarreal arrived at the border for admission to the United States and presented another person's passport card, falsely claimed that the card was his, and falsely claimed that he was a United States citizen.

When the immigration officer discovered the fraud, Villarreal admitted that the passport card was not his. This time, rather than permitting Villarreal to depart voluntarily, the officer issued an expedited order of removal under 8 U.S.C. § 1225(b)(1)(A)(i) and referred Villarreal to the U.S. Attorney for criminal prosecution. Villarreal was charged with and convicted of violating 8 U.S.C. § 1326 (punishing aliens for attempted entry after removal) and 18 U.S.C. § 1544 (punishing aliens for attempted entry with another's passport). After serving 15 months' imprisonment, he was removed to Mexico on December 23, 2015.

For an eighth time, Villarreal illegally entered the United States at sometime after 2015 and, on August 6, 2017, was arrested in Chesterfield County, Virginia, for DWI, obstruction of justice, and driving on a suspended or revoked license. This arrest led to Villarreal's prosecution in this case for his violation of § 1326(a), (b)(1). For the removal element of this violation, the government relied on Villarreal's November 20, 2014 expedited removal.

Villarreal filed a motion to dismiss the indictment, asserting the defense afforded under § 1326(d) that his 2014 expedited removal "was fundamentally unfair" and therefore could not be used to satisfy the removal element of his § 1326 offense. The district court invited the parties to consider § 1225(b)(1)(D), which provides that "[i]n any action brought against an alien under . . . section 1326 of this title, the court *shall not have jurisdiction* to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) [of § 1225(b)(1), the expedited removal provision]." (Emphasis added). After additional briefing, the court concluded, relying on *United*

4

*States v. Mendoza-Lopez*, 481 U.S. 828 (1987), that § 1225(b)(1)(D) was unconstitutional insofar as it denied Villarreal the right to challenge his 2014 expedited removal, which was an element of his § 1326 offense. The court then considered Villarreal's challenge on the merits and, applying § 1326(d)(3), concluded that the 2014 removal order was not fundamentally unfair because the alleged due process violation on which Villarreal relied did not result in any prejudice.

Villarreal then pleaded guilty, retaining the right to appeal the district court's denial of his motion to dismiss, and the district court sentenced him to 21 months' imprisonment.

From the judgment against him dated August 27, 2018, Villarreal filed this appeal, challenging the district court's denial of his motion to dismiss the indictment.

II

Villarreal contends that the removal order of November 20, 2014, that formed the basis for his § 1326 conviction was "fundamentally unfair" and thus invalid under § 1326(d). He argues, therefore, that his conviction must be set aside. Section 1326 provides that "any alien who . . . has been . . . *removed* . . . and thereafter . . . is at any time found in the United States . . . shall be fined . . . or imprisoned . . . or both." 8 U.S.C. § 1326(a) (emphasis added). Villarreal asserts that in issuing the expedited removal order under § 1225(b)(1)(A)(i), the immigration officer failed to provide him with procedural due process.

To address Villarreal's argument, the district court found it necessary to consider § 1225(b)(1)(D), which strips courts of jurisdiction in proceedings under § 1326 "to hear any claim attacking the validity of an order of removal" entered under the expedited removal provision of § 1225(b)(1)(A)(i). After receiving additional briefing, the court held that § 1225(b)(1)(D) was unconstitutional under *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), and then considered and rejected Villarreal's attack on the validity of his expedited removal order.

Because § 1225(b)(1)(D) purports to strip both the district court and this court of jurisdiction to hear Villarreal's attack on the 2014 expedited removal order entered under § 1225(b)(1)(A)(i), we too conclude that we cannot consider Villarreal's arguments before determining the effect of § 1225(b)(1)(D). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1988).

Section 1225(b)(1)(A)(i) requires immigration officers to issue an expedited order of removal to any alien arriving at the border of the United States if the officer determines that the alien is inadmissible because he was seeking admission by fraudulent or willful misrepresentations or without valid entry and travel documents. The order must be entered "without further hearing or review," unless the alien is seeking asylum or indicates a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). Because Villarreal met the criteria for expedited removal, the immigration officer ordered him removed without further hearing or review.

When focusing on § 1225(b)(1)(A)(i) alone, it is well established that Congress is constitutionally authorized to provide for expedited removals without review. As the

Supreme Court has explained, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his admission, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950), and *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60 (1892)). Accordingly, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff*, 338 U.S at 544; *see also Zadvyas v. Davis*, 533 U.S. 678, 693 (2001).

But the issue in this case is not whether expedited removal is constitutional but whether an alien can challenge an expedited removal when the government later uses that removal as a basis *for a criminal prosecution* under § 1326. Even though the removal thus becomes an element of the § 1326 criminal offense, § 1225(b)(1)(D) provides that a court in a § 1326 prosecution lacks jurisdiction to hear a claim attacking the validity of the removal when it was an expedited removal.

We conclude that when an expedited removal is alleged to be *an element in a criminal prosecution*, the defendant in that prosecution must, as a matter of due process, be able to challenge the element — *i.e.*, to contend that the removal was invalid — if he did not have a prior opportunity to do so. Because the rules attendant to expedited removal preclude review of the removal order, the defendant in a § 1326 prosecution premised on an expedited removal order under § 1225(b)(1)(A)(i) must be given the opportunity in the § 1326 prosecution to challenge the validity of that order. And because § 1225(b)(1)(D) strips courts in § 1326 prosecutions from hearing a defendant's

challenge to an expedited removal element, we conclude that this jurisdiction-stripping provision is unconstitutional. *See Mendoza-Lopez*, 481 U.S. 837–39.

In *Mendoza-Lopez*, the Supreme Court concluded that when a "statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." 481 U.S. at 837. It explained that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a *criminal sanction*, there must be *some meaningful review* of the administrative proceeding." *Id*. at 837–38 (emphasis added). Addressing the version of § 1326 in effect at the time, the Court held that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an *element of a criminal offense*." *Id*. at 838 (emphasis added). Stated otherwise, "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id*. at 839.

The government contends that the district court erred in finding § 1225(b)(1)(D) unconstitutional under *Mendoza-Lopez* for two distinct reasons. First, it contends that we need not address the constitutionality of § 1225(b)(1)(D) because the alleged constitutional violation during the November 20, 2014 removal proceeding, about which

8

Villarreal complains, was harmless. Second, it seeks to distinguish the holding of *Mendoza-Lopez*, thus arguing that § 1225(b)(1)(D) is constitutional and by its plain terms precludes Villarreal's attack on his prior removal. Alternatively, it argues that even if § 1225(b)(1)(D) were unconstitutional, Villarreal's claims attacking his removal proceeding fail under the standards for the defense afforded him under § 1326(d).

On its first contention, the government argues that neither the district court nor this court needs to reach the constitutionality of § 1225(b)(1)(D) because any due process violation in the 2014 removal proceeding was harmless. But in considering harmlessness, we would still have to consider the nature of Villarreal's challenge to his 2014 removal, the strength of his arguments, and the consequences of the challenged conduct. It would be impossible for a court to consider the harm of a constitutional violation without considering its impact on the defendant. Thus, a finding that we have jurisdiction would have to precede any effort by us to consider the harm or lack thereof of the alleged due process violation.

Focusing specifically on the district court's finding of unconstitutionality, the government argues that because Congress had authority to adopt expedited removal at the Nation's borders, it also could constitutionally bar direct review of such removal orders. But that is not disputed, and we agree with that proposition as far as it goes. Rather, the dispute here concerns whether a defendant *in a later criminal prosecution* that relies on an expedited removal as an element can attack the validity of that element. Because that inquiry takes us to the holding of *Mendoza-Lopez*, the government attempts to limit the application of *Mendoza-Lopez* by noting that the defendants removed in *Mendoza-Lopez*

9

had already entered the country and were not aliens attempting to enter at the border. *See* 481 U.S. at 830. The force of that distinction, however, goes only to the question of whether Congress had the power to authorize expedited removal for aliens at the border and does not explain why a defendant who was formerly detained *at the border* would not need to be able to challenge the elements of a § 1326 *criminal prosecution* that is later initiated *in the United States*. Under the principles announced by *Mendoza-Lopez*, removal — of whatever kind — when made an element of a criminal offense must be subject to some meaningful review, either administratively or during the subsequent prosecution. And while administrative and court reviews can undoubtedly be denied for expedited removals at the border, some meaningful review of such a removal cannot be denied when the government chooses to elevate the fact of removal to become an element of a criminal offense. In this case, *Mendoza-Lopez* requires that the defendant have the right to challenge each element, including the validity of the underlying removal, when he has not had a prior opportunity to do so. "Depriving an alien of the right to have the disposition in a deportation hearing reviewed in the judicial forum requires . . . that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish *an element of a criminal offense*." *Mendoza-Lopez*, 481 U.S. at 839 (emphasis added).

Additionally, the government argues that the standards for reviewing removals included in § 1326(d) somehow redeem any flaw created by § 1225(b)(1)(D). But this argument fails to recognize the operation of the two provisions, which serve distinct roles. Section 1326(d) provides standards for review of *all* removal orders used as

elements to prosecute § 1326 violations, whereas § 1225(b)(1)(D) prohibits review of only a *subclass* of those removal orders that are known as expedited removal orders. When an expedited removal forms the basis of a § 1326 prosecution, § 1225(b)(1)(D) precludes a court from reviewing the validity of the removal. Thus, while § 1326(d) provides general standards for challenging removals that form the basis of a § 1326 prosecution, § 1225(b)(1)(D) purports to carve out expedited removals from the operation of § 1326(d).

Because § 1225(b)(1)(D) prohibits Villarreal from challenging the validity of the removal order that forms the basis — an element — of the § 1326 offense being prosecuted, it denies him due process. Accordingly, we conclude, as did the district court, that the provision is unconstitutional as it operates in the circumstances of this case. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) (holding § 1225(b)(1)(D) unconstitutional to the extent it bars review of an expedited removal order in a § 1326 prosecution). *But cf. United States v. Lopez-Vasquez*, 227 F.3d 476, 486 (5th Cir. 2000) (holding that it was unnecessary to address the constitutionality of § 1225(b)(1)(D) because the alien suffered no prejudice from the allegedly illegal removal).

III

On the merits of his challenge to the validity of his expedited removal order of November 20, 2014, Villarreal contends that the procedures were "fundamentally unfair" and therefore that his § 1326 conviction, which relied on that removal order, cannot

11

stand. 8 U.S.C. § 1326(d)(3); *see also Mendoza-Lopez*, 481 U.S. at 839–40. He asserts that after he arrived at the border and the immigration officer discovered that he was using another person's passport card, a fraudulent identity, and falsely claimed citizenship, the officer advised him of the right to have counsel, which he invoked, thus "cut[ting] off communication" and precluding his participation in the expedited removal proceeding. He argues that in this manner, he was "forced to choose between two non-exclusive constitutional rights." He also argues that as a result, he was prejudiced "because absent the procedural violation, there was a reasonable probability the officers would have granted statutory relief in the form of withdrawal" of his application for admission under 8 U.S.C. § 1225(a)(4).

To demonstrate that a removal order used in a § 1326 criminal prosecution is "fundamentally unfair," the defendant must show, first, a violation of his due process rights and, second, prejudice caused by the violation. *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005); *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003). And, to establish prejudice, the defendant must show that, "but for the errors complained of, there was a reasonable probability that he would not have been deported." *El Shami*, 434 F.3d at 665; *Wilson*, 316 F.3d at 511.

In this case, when the immigration officer discovered that Villarreal's admission to the United States on November 20, 2014, was being sought by fraud, the officer advised Villarreal of his *Miranda* rights in light of a potential criminal prosecution. Villarreal also became subject to the expedited removal procedure under § 1225(b)(1)(A)(i). That section provides that if an immigration officer determines that an alien arriving at the

12

border is inadmissible under § 1182(a)(6)(C) (for (i) seeking admission "by fraud or willfully misrepresenting a material fact" or (ii) falsely representing himself to be a citizen) or under § 1182(a)(7) (for not being in possession of valid entry documents and passports or travel documents), "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Under this abbreviated process, the immigration officer advises the alien of his determination and provides the alien "an opportunity to respond." 8 C.F.R. § 235.3(b)(2)(i). Villarreal notes that after he had invoked his right to counsel, he could not respond to the immigration officer's determination and contends therefore that it was the conflict between exercising his right to counsel and his right to participate in this expedited removal proceeding that violated his due process rights.

The district court declined to address Villarreal's procedural due process argument, reasoning that because Villarreal could not "demonstrate prejudice that could have resulted from" the violation, he had failed to establish that the expedited removal procedure was fundamentally unfair. We agree.

To show prejudice, Villarreal argues that, but for the alleged due process violation, "there was a reasonable probability the officers would have granted [him] statutory relief in the form of withdrawal" of admission under 8 U.S.C. § 1225(a)(4), which provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." Such relief would have displaced the expedited removal order,

13

which was an essential element of his § 1326 violation. But, as the district court concluded, Villarreal's attempt to show prejudice fails.

First, Villarreal presented *nothing* to establish that he would have requested a § 1225(a)(4) withdrawal had he responded to the immigration officer. Indeed, the district court observed that Villarreal submitted no evidence, *or even argument*, that he knew of his ability to request withdrawal of his application, and there was no requirement that he be so advised.

Second, withdrawal of admission under § 1225(a)(4) is granted "*in the discretion of the Attorney General*" (emphasis added), and numerous factors suggest that the Attorney General would not have exercised his discretion in Villarreal's favor. As of the time of his removal, Villarreal had seven criminal convictions — six misdemeanors and one felony. In addition, Villarreal had been deported only shortly before his November 20, 2014 attempted entry. Moreover, before that removal, Villarreal had five times been allowed to return to Mexico voluntarily after entering illegally. And Villarreal's most recent attempt to enter the country in 2014 was accompanied by fraud, including his use of someone else's passport card, his misidentification of himself, and his representation that he was a citizen. But perhaps most indicative was the fact that the immigration officer, to whom Villarreal would have requested withdrawal, exercised his discretion to refer Villarreal to the U.S. Attorney *for criminal prosecution*. The officer would not have made that recommendation if he were inclined to exercise discretion to let Villarreal voluntarily withdraw his admission application under § 1225(a)(4).

14

Despite these facts, which strongly indicate that the Attorney General would not have exercised his discretion favorably with respect to any request by Villarreal for withdrawal under § 1225(a)(4), Villarreal presented the district court with an anonymous document indicating that withdrawal had been granted to an alien in circumstances purportedly similar to those of Villarreal. But, as the district court pointed out, the circumstances of the posited comparator were substantially different in that, for example, he had only one criminal conviction, while Villarreal had seven.

In sum, because Villarreal did not sufficiently demonstrate *a reasonable probability* that the Attorney General would have allowed him to withdraw his application for admission under § 1225(a)(4), he failed to show prejudice, as required to demonstrate that his removal was fundamentally unfair. Accordingly, Villarreal's conviction under § 1326 based on his November 20, 2014 expedited removal is affirmed.

AFFIRMED