**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4740**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SAUL QUINTEROS GUZMAN, a/k/a Saul Quinteros-Guzman, a/k/a Saul Quinters Guzman,

Defendant - Appellant.

--------------------------------------------------------------------

LAW PROFESSORS, IMMIGRATION SCHOLARS, AND CLINICIANS,

Amici Supporting Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, Senior District Judge. (3:18-cr-00031-NKM-JCH-1)

Argued: January 26, 2021                   Decided: May 25, 2021

Before NIEMEYER, KING, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Rushing joined.

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant. Kathryn Anne Rumsey, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. Kari Hong, Ninth Circuit Appellate Program, BOSTON COLLEGE LAW SCHOOL, Newton, Massachusetts; Stephen Manning, INNOVATION LAW LAB, Portland, Oregon, for Amici Curiae.

---

NIEMEYER, Circuit Judge:

Saul Quinteros Guzman, a native and citizen of El Salvador, was found in the United States after having previously been removed under the expedited removal procedure of 8 U.S.C. § 1225(b)(1). He was charged with reentry without permission after having been removed, in violation of 8 U.S.C. § 1326(a). He filed a motion to dismiss his indictment, maintaining that his earlier removal was invalid as fundamentally unfair under § 1326(d) because he was denied the right to counsel, in violation of the Due Process Clause and the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), and that he suffered prejudice. The district court denied his motion, and Guzman was convicted. On appeal, we conclude that the Due Process Clause and the APA did not apply to his removal proceeding and therefore affirm.

I

Guzman crossed the Rio Grande into the United States without inspection or an entry document at 9:30 p.m. on March 16, 2016. Soon thereafter, immigration officers encountered him near McAllen, Texas, a city contiguous to the river, and placed him in an expedited removal proceeding under 8 U.S.C. § 1225(b)(1). When Guzman was unable to produce a valid entry document, the officers notified him that he was inadmissible and invited him to provide information otherwise, including whether he feared returning to his home country. Guzman confirmed that he was from El Salvador and that he came to the United States "to look for work." He also stated that he did not "fear that [he] [would] be persecuted or tortured" if sent back to El Salvador. After Guzman was advised that if he

3

was seeking asylum, he would be provided counsel, he decided not to seek asylum and instead stated that he would to return to El Salvador. Accordingly, immigration officers issued Guzman an order of removal on March 18, 2016, under the expedited removal procedure, and on March 31, he was removed.

Over two years later, on October 17, 2018, immigration officers again encountered Guzman, this time in the Western District of Virginia, where he had been arrested for a hit-and-run and driving without a license. Guzman had not received permission of the Attorney General or the Secretary of Homeland Security to be in the United States.

After Guzman was charged with illegal reentry, in violation of 8 U.S.C. § 1326(a), he filed a motion to dismiss the indictment, claiming that his 2016 removal order was invalid because he had been denied the right to counsel, as guaranteed by the Due Process Clause and afforded by the APA. That denial, he claimed, prejudiced him because counsel would have advised him to seek a withdrawal of his application for admission, which, if allowed, would have enabled him to "depart immediately" without the issuance of a removal order. 8 U.S.C. § 1225(a)(4). In such event, his 2018 presence in the United States would not have violated § 1326(a).

The district court conducted a hearing and thereafter denied Guzman's motion. The court held first that the Immigration and Nationality Act ("INA"), as implemented, did not provide Guzman with a statutory or regulatory right to counsel in expedited removal proceedings — unless asylum was asserted or a fear of persecution expressed — and that the APA's right to counsel provision was inapplicable to immigration proceedings. The court then addressed Guzman's due process claim and, after applying *Mathews v. Eldridge*,

4

424 U.S. 319 (1976), found no due process right to counsel. Finally, the court concluded that Guzman was not prejudiced by the denial of counsel because there was no "reasonable probability" that representation by counsel would have changed the outcome.

Guzman thereafter pleaded guilty, reserving his right to appeal the district court's denial of his motion to dismiss the indictment based specifically on his argument that he had a due process right and statutory right under the APA to counsel in his expedited removal proceeding and that the denial of that right prejudiced him. The district court sentenced him to two years' probation.

From the court's judgment dated September 25, 2019, Guzman filed this appeal.


II

Section 1326(a), under which Guzman was convicted, provides that "any alien who . . . *has been . . . deported*[] *or removed* . . . and thereafter enters . . . or is at any time found in[] the United States" without permission shall be punished. 8 U.S.C. § 1326(a) (emphasis added). Thus, to prove the offense, the government must establish: (1) that the defendant is an alien; (2) that he was deported or removed from the United States; (3) that he thereafter reentered or was found in the United States; and (4) that he lacked permission to reenter or be in the United States. *See United States v. Ayon-Brito*, 981 F.3d 265, 269 (4th Cir. 2020).

Guzman filed a motion to dismiss his indictment, challenging the validity of the second element — his prior removal. He contended that during the 2016 removal proceeding, which was conducted under 8 U.S.C. § 1225(b)(1)(A)(i), he was not "*told* he

5

had a right to counsel." (Emphasis added). As he now articulates his claim, he argues that "[t]he expedited removal procedure *prohibits* an alien from accessing counsel" and thus "denies aliens in deportation proceedings the due process required by the Fifth Amendment of the Constitution, and conflicts with the requirements of the Administrative Procedure Act." (Emphasis added). And he alleges further that the denial of this right to counsel prejudiced him because an attorney could have advised him to request withdrawal of his application under § 1225(a)(4), which, if granted, would have precluded a removal order and consequently a § 1326(a) violation. At bottom, Guzman argues that the underlying removal was invalid because it was "fundamentally unfair," thus requiring that the § 1326(a) charge be dismissed. 8 U.S.C. § 1326(d) (authorizing collateral attacks on underlying removal orders as "fundamentally unfair").

Because Guzman did not have an opportunity to challenge his 2016 removal earlier — as his expedited removal was not subject to review — he became entitled to mount a challenge when he was charged under § 1326(a) and the 2016 removal became an element of the criminal offense. As we have held, "when an expedited removal is alleged to be an element in a criminal prosecution, the defendant in that prosecution must, as a matter of due process, be able to challenge the element — *i.e.*, to contend that the removal was invalid — *if he did not have a prior opportunity to do so*." *United States v. Villarreal Silva*, 931 F.3d 330, 335 (4th Cir. 2019) (one emphasis omitted and one added); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987). And "[t]o demonstrate fundamental unfairness" under § 1326(d), Guzman "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he

6

suffered prejudice as a result of the defects." *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005).

The precise nature of Guzman's claim is not entirely clear. In one instance, he asserted that "he was *not advised* of his right to counsel," and in another, he stated that the expedited procedure under which he was removed "*prohibit*[*ed*] [him] from accessing counsel." (Emphasis added). Because both formulations focus on his *opportunity* to obtain counsel, and not on any claim that the government was required to provide counsel, we take his position to be that the expedited procedure did not provide him with adequate notice and give him an adequate opportunity to obtain counsel — whether by advising him of it or prohibiting him from doing so. The nature of that claim is perhaps sharpened when considered in contrast to § 1229a(b)(4), which provides that in connection with a hearing before an immigration judge, "the alien *shall have the privilege of being represented*, at no expense to the Government, by counsel of the alien's choosing." 8 U.S.C. § 1229a(b)(4)(A) (emphasis added); *see also id*. § 1362 ("In any removal proceedings before an immigration judge and in any appeal proceedings . . . , the person concerned *shall have the privilege of being represented* (at no expense to the Government) by such counsel" (emphasis added)). Thus, we understand Guzman's argument to be that because the procedure failed to provide him the opportunity to obtain counsel during the interview with the immigration officer who issued the expedited removal order, it effectively denied him *the right to counsel*, as protected by the Due Process Clause and afforded by the APA.

At the outset, it is undisputed that the text of the INA's expedited removal procedure does not require that the alien be advised of a right to counsel or be accommodated in an

7

effort to obtain counsel. Generally, the INA's comprehensive provisions are specific, describing when counsel is available to an alien and when not. For instance, in connection with removal proceedings *before an immigration judge*, § 1229a sets forth the procedures to be followed, including affording the alien "the privilege of being represented, at no expense to the Government, by counsel," 8 U.S.C. § 1229a(b)(4)(A), and § 1229 entitles the alien to be given notice before the removal hearing of that right to retain counsel, *id*. § 1229(a)(1)(E). Moreover, § 1229a provides that the prescribed procedures "shall be the sole and exclusive procedure" for determining admission and removal, "[*u*]*nless otherwise specified* in [Chapter 12]." *Id*. § 1229a(a)(3) (emphasis added). The expedited procedure of § 1225(b)(1) is, of course, such an otherwise specified procedure in Chapter 12, and it does not provide for the privilege of being represented by counsel.

The expedited removal procedure was enacted in 1996 to address the pending backlog of cases by "weeding out patently meritless claims and expeditiously removing the aliens making such claims." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1963 (2020). The procedure treats aliens who "arrive[]" in the United States and have not been admitted as "applicant[s] for admission." 8 U.S.C. § 1225(a)(1). And if an immigration officer determines that the alien is "inadmissible" for any of a number of specified reasons, including that he does not have a valid entry document, the officer must order the alien removed "without further hearing or review." *Id*. § 1225(b)(1)(A)(i). This expedited removal can be avoided, however, if the alien "indicates either an intention to apply for asylum" or "a fear of persecution." *Id*.

8

The procedure for expedited removal that the immigration officer must follow is brief and efficient. The immigration officer, on encountering the alien, must (1) read the alien a form asking about the alien's "identity, alienage, and inadmissibility"; (2) "advise the alien of the charges against him or her"; (3) give the alien "an opportunity to respond" to the charges; (4) "obtain[] supervisory concurrence" of the officer's determination on the charges; and (5) "serve the alien" with the determination. 8 C.F.R. § 235.3(b)(2)(i). The immigration officer's order is not subject to "further hearing or review," unless, as noted, the alien indicates an intent to seek asylum or a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). This procedure makes no provision for counsel, and this exclusion was deliberate, as indicated by the contrast between the expedited removal procedure and its exceptions, including when asylum or fear of persecution is asserted, and then an opportunity to obtain counsel is prescribed. *Id*. § 1158(d)(4)(A) (requiring the government to "advise the alien of the privilege of being represented by counsel"). Indeed, this is stated expressly in the implementing regulation, which provides, "[*e*]*xcept in the case of an alien subject to the expedited removal provisions* . . . , an alien . . . placed in formal proceedings . . . will be advised of . . . the right to be represented at no expense to the Government." 8 C.F.R. § 287.3(c) (emphasis added).

Guzman recognizes that the INA does not provide for counsel in expedited removal proceedings, and he acknowledges that the procedure specified by the INA and its regulations was followed by the immigration officer in his case. Rather, he argues that the statutorily prescribed procedure was invalid because it failed to include a right to counsel as protected by the Due Process Clause and afforded by the APA.

9

A

We address first Guzman's argument under the Due Process Clause, by which he contends that that Clause is applicable to the INA's expedited removal procedures. The Supreme Court, however, has held otherwise when, as here, an alien had not previously *effected an entry* into the United States at the time of his removal proceeding.

First, in the broader context, the admission and exclusion of aliens is a sovereign prerogative that is exercised under the Constitution by the political departments. And therefore, as the Supreme Court has repeatedly stated, "an alien seeking initial admission to the United States requests a privilege and *has no constitutional rights* regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950), and *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60 (1892)). Accordingly, "[w]hatever the procedure authorized by Congress is, *it is due process* as far as an alien denied entry is concerned." *Knauff*, 338 U.S. at 544 (emphasis added); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

This foundational principle was recently applied by the Court in *Thuraissigiam*, where it rejected the Ninth Circuit's holding "that respondent 'had a constitutional right to expedited removal proceedings that conformed to *the dictates of due process.*'" 140 S. Ct. at 1981 (emphasis added) (quoting 917 F.3d 1097, 1111 n.15 (9th Cir. 2019)). In doing so, the Court stated,

> [The Ninth Circuit's] holding is contrary to more than a century of precedent. In 1892, the Court wrote that as to "foreigners who have never been

10

naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law," "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are due process of law*."

*Id*. at 1982 (emphasis added) (quoting *Nishimura Ekiu*, 142 U.S. at 660). The Court explained further that within Congress's "plenary authority to decide which aliens to admit" is the "concomitant . . . power to set the procedures to be followed" in making that determination. *Id*. Thus, while an alien *who has already effected an entry* into the United States is entitled to due process, as required by the Constitution, "an alien who tries to enter the country illegally is treated as an applicant for admission" and therefore does not have the same status for due process purposes as an alien who has "effected an entry." *Id*. (cleaned up). In *Thuraissigiam*, where the alien was apprehended just "25 yards into U.S. territory," the Court made clear that he remained an applicant for admission who is "treated for due process purposes as if stopped at the border." *Id*. (cleaned up) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). And "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause" than those allowed by Congress. *Id*. at 1964.

In this case, Guzman had never effected an entry into the United States at the time he was placed in his expedited removal proceeding. When he was apprehended at the border, he was merely an applicant for admission, for whom the INA's admission procedures was the due process. The immigration officers followed those procedures fully — which Guzman does not challenge — ultimately issuing Guzman an order of removal. In these circumstances, Guzman cannot now claim that the Constitution's Due Process

11

Clause required more than was provided by Congress in the INA. Accordingly, we reject his claim that the removal order was invalid under the Due Process Clause on the ground that the procedure followed by the immigration officer did not include giving Guzman the opportunity to obtain counsel.

Guzman argues, however, that *Thuraissigiam* "does not apply in criminal cases under 8 U.S.C. § 1326" because the consequences of a conviction entitle him to greater protections than an alien facing only deportation. (Citing *United States v. Guzman-Hernandez*, 487 F. Supp. 3d 985, 990–92 (E.D. Wash. 2020)). But this argument blurs the issues. Without question, Guzman enjoys full constitutional protections with respect to his criminal prosecution, including a right to appointed counsel. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020). The holding in *Thuraissigiam* does not purport to diminish those rights. What is at issue within his criminal prosecution is whether an element of his criminal offense — a prior removal order — cannot be established because *during the prior removal* he did not have counsel. On that issue and with the support of *Thuraissigiam*, we hold that the Due Process Clause did not entitle Guzman to counsel when apprehended at the border and promptly removed.

B

Guzman also argues that the APA grants him the right to counsel in expedited removal proceedings conducted under the INA. The APA — in 5 U.S.C. § 555(b) — provides that "[a] person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel." But Guzman's

12

argument for the application of the APA fares no better than his due process argument. While the APA did indeed serve as a model for the INA, *see Marcello v. Bonds*, 349 U.S. 302, 308–09 (1955), the INA "supplant[ed]" the APA for purposes of immigration proceedings, *Ardestani v. INS*, 502 U.S. 129, 133 (1991). And the two acts were not intended to function in an interlaced fashion such that the APA applies to matters not specifically addressed by the INA. This was explained by the Supreme Court in both *Marcello* and *Ardestani*.

In *Marcello*, the alien was ordered deported for violating a tax law. 349 U.S. at 303. In challenging his deportation proceedings, he alleged that they violated the Due Process Clause and the APA in multiple respects. *Id*. at 304. As most relevant here, he argued that whenever the INA procedure was at variance with the APA, the APA provisions governed unless the INA "'expressly' negate[d] their application." *Id*. at 305 (quoting 5 U.S.C. § 559). The Supreme Court rejected the argument, noting that the INA, while modeled after the APA, displaced the APA as a "specialized administrative procedure." *Id*. at 308. The Court reasoned that "when in this very particularized adaptation there was a departure from the [APA] — based on novel features in the deportation process — surely it was the intention of the Congress to have the deviation apply and not the general model," i.e., the APA. *Id*. at 309. The Court concluded that the INA procedures were intended to be "exclusive," *id*. at 309–10, pointing to statutory language in the INA that "[t]he procedure [therein prescribed] shall be the sole and exclusive procedure for determining the deportability of an alien under this section," as well as legislative comments, including the House Report's statement that "the prescribed deportation proceedings shall be the sole

13

and exclusive procedure, notwithstanding the provisions of any other law," *id*. (cleaned up).

Later, in *Ardestani*, the alien successfully avoided deportation and then sought attorneys fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504, which applies to "adversary adjudication[s]" "under [5 U.S.C.] § 554," a provision of the APA. 502 U.S. at 132–33. In rejecting the alien's claim, the Supreme Court held that her "deportation proceeding was not subject to the APA and thus not governed by the provisions of § 554." *Id*. at 134. And in reaching that conclusion, the Court relied extensively on its earlier decision in *Marcello*. The Court explained — as plainly relevant here — that "*Marcello* does not hold simply that deportation proceedings are subject to the APA except for specific deviations sanctioned by the INA." *Id*. at 134. Rather, the Court understood *Marcello* to be holding "that Congress intended the provisions of the Immigration and Nationality Act of 1952 (INA) to *supplant* the APA in immigration proceedings." *Id*. at 133 (emphasis added) (citation omitted).

To be sure, the discussion in both *Marcello* and *Ardestani* related to the INA deportation procedures when a hearing before an immigration judge was the only prescribed method, as the expedited removal procedure was not enacted until 1996. But once enacted by Congress, the expedited removal procedure became no less a part and parcel of the specialized administrative procedure applicable to deportation proceedings. The INA is a self-contained, comprehensive, and reticulated administrative process that displaced wholesale the provisions of the APA that had theretofore been applicable. *Cf. Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (referring to

ERISA as a "comprehensive and reticulated statute"). We thus reject Guzman's argument that the APA requires — as an additional procedural right in removal proceedings — that the alien have the opportunity to obtain counsel in expedited removal proceedings under § 1225(b)(1)(A)(i).

Guzman nonetheless seeks to distinguish *Marcello* and *Ardestani* on the ground that they held only that the APA's *hearing* procedures were inapplicable to the INA, saying nothing about the APA's *non*-hearing provisions, including § 555(b)'s counsel provision. But surely, a right to counsel is part of the hearing procedure and therefore would not be a "non-hearing" provision. More importantly, however, this argument fails to account for the larger context of the INA, Congress's purpose in establishing a specialized administrative procedure, and the Supreme Court's observations about the relationship between the APA and the INA. The Court emphasized that the APA served "*only* as a model" for the INA, and that the INA, not the APA, would apply to deportations "based on novel features in the deportation process." *Marcello*, 349 U.S. at 309 (emphasis added). It recited legislative history to reveal Congress's intent to have the INA deportation process be the *exclusive* procedure, "notwithstanding any other law, including the [APA]." *Id*. at 309–10 (cleaned up). And were these observations in *Marcello* not sufficiently clear to indicate that the INA displaced the APA when it came to deportation proceedings, the Court in *Ardestani* left little doubt, stating, "In *Marcello*, we held that Congress intended the provisions of the [INA] *to supplant* the APA in immigration proceedings." *Ardestani*, 502 U.S. at 133 (emphasis added) (cleaned up).

15

Given the comprehensiveness and detail of the INA, which pays careful attention to the numerous types of circumstances for the admission and removal of aliens and provides specific procedures for addressing each circumstance, we must reach the same conclusion here as reached by the Supreme Court in *Marcello* and *Ardestani*. The fact that the expedited removal procedure in particular had not yet been included in the various deportation procedures of the INA when *Marcello* and *Ardestani* were decided is an unavailing argument, unless one sees the INA and APA functioning as an interlaced patchwork. Yet, one can hardly expect that in applying INA procedures to the admission and removal of aliens, Congress intended that the courts and counsel must lay the APA and the INA side by side and determine which of two similar provisions applies to immigration proceedings. That is precisely the approach that both *Ardestani* and *Marcello* rejected. Moreover, it would, with respect to this case, violate the intent of Congress in tailoring an abbreviated, expedited removal process for well defined circumstances.

\* \* \*

For the reasons given, we reject Guzman's claim that his 2016 expedited removal order was "fundamentally unfair" for lack of representation by counsel during the removal proceeding, as guaranteed by the Due Process Clause and afforded by the APA, and therefore was invalid. Accordingly, the judgment of the district court is

AFFIRMED.

16